IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 15 C 3566 |
| ) | |
| TRALVIS EDMOND, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Tralvis Edmond is serving an 84 month prison sentence after his conviction on drug and gun charges. Edmond has moved to set aside his conviction and sentence pursuant to 28 U.S.C. § 2255, alleging ineffective assistance of counsel. He also seeks to modify his sentence pursuant to 18 U.S.C. § 3582(c)(2) based on Amendment 782 to the Sentencing Guidelines. The Court orders further proceedings on Edmond's ineffective assistance of counsel claims but denies his request to modify the sentence.

### Background

On May 18, 2010, a confidential informant met with Chicago police officer John Frano and reported that he had purchased heroin from Edmond in a basement apartment at 736 N. Ridgeway in Chicago. The record does not identify the date the informant purchased the heroin from Edmond. Officer Frano applied for and obtained a search warrant for the apartment based on the information from the informant. On May 20, officers of the Chicago Police Department executed the warrant. They recovered

two loaded firearms and significant amounts of heroin and crack cocaine packaged for distribution. Edmond was not present for the search, but his girlfriend was. She told officers that she and Edmond lived in the Ridgeway apartment together. She told officers that Edmond had recently purchased the firearms after being robbed.

Officers issued an investigative alert for Edmond in connection with the search of his home. He was eventually arrested after officers identified him during a traffic stop. Officers testified that Edmond made several incriminating statements to them after his arrest. Specifically, he confirmed that he had purchased the guns for protection. Officers also testified that Edmond admitted that he stored the drugs in his home, although he stopped short of admitting he intended to sell them. The government maintains that the officers advised Edmond of his rights under *Miranda v. Arizona* and that he waived them before making the incriminating statements.

Edmond was charged with one count of possessing a firearm after previously having been convicted of a felony, in violation of 18 U.S.C. § 922(g); one count of possessing heroin with intent to distribute it, in violation of 21 U.S.C. § 841(a)(1); and one count of possessing crack cocaine with the intent to distribute it, in violation of 21 U.S.C. § 841(a)(1). Before trial, Edmond moved to suppress his post-arrest statements. He submitted an affidavit in which he denied that he made the incriminating statements, denied that the police read him his rights, and denied that he waived his rights. During the suppression hearing, officer Frano testified, and defense counsel cross-examined him. Edmond did not testify, for reasons undisclosed by the record. Judge Blanche Manning, to whom the case was then assigned, found officer Frano's testimony credible and denied Edmond's motion to suppress based on that testimony.

At trial before the undersigned judge, the government called as witnesses the officers who carried out the search of the apartment, officer Frano, a chemist, and a drug expert. Edmond exercised his right not to testify. The jury convicted Edmond on the felon-in-possession and heroin charges and acquitted him on the crack cocaine charge. At sentencing, the Court imposed an obstruction of justice enhancement based on a finding that Edmond had knowingly made false statements in the affidavit he filed to obtain a hearing on his motion to suppress, reasoning that if officer Frano's testimony that he gave *Miranda* warnings and Edmond had waived them was credible as Judge Manning had found, then the corresponding assertions in Edmond's affidavit had to be false, and knowingly so. The Court departed from Edmond's applicable Sentencing Guideline range after finding that a sentence within the range specified by the career offender guidelines would be unjustly excessive due the nature of Edmond's prior offenses and the relatively light sentences he had received for them. The Court ultimately imposed an 84 month prison sentence. Edmond appealed his conviction, but his appeal was unsuccessful. *See United States v. Edmond*, 560 F. App'x 580 (7th Cir. 2014).

## Discussion

Edmond asks the Court to vacate his conviction and sentence based on ineffective assistance of counsel and alternatively to modify the sentence based on a later, retroactively-applicable amendment to the Sentencing Guidelines. The Court will address the ineffective assistance claims first. To sustain a claim of ineffective assistance of counsel, a defendant must establish that his attorney's performance fell below an objective level of reasonableness and he was prejudiced by the attorney's

3

error.  *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).  Edmond bases his ineffective assistance claims on counsel's failure to challenge the May 2010 search warrant and counsel's failure to call him to testify at the hearing on the motion to suppress the post-arrest statement.  Because Edmond is a *pro se* litigant, the Court construes his motion liberally.  *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

**1.     Search warrant**

Edmond argues that counsel's decision not to challenge the search warrant for lack of probable cause amounted to ineffective assistance.  The affidavit submitted to obtain the warrant said (among other things) that the applicant, officer Frano, had met with the informant on May 18, 2010.  The affidavit stated that on that date, the informant told Frano that at some prior but unspecified date, he was at Edmond's residence at 736 N. Ridgeway and observed him handling significant quantities of narcotics packaged for sale, some of which the informant purchased.  The affidavit further stated that on May 18, Frano drove the informant past 736 N. Ridgeway, and the informant pointed out the basement apartment as the location where he had purchased the narcotics from Edmond.  *See* Def.'s Mot., Ex. 1.  Edmond argues that given the absence of a date when the informant claimed to have seen this activity, the warrant was subject to challenge on the ground that the information was stale and thus did not establish probable cause.

A defendant asserting a Fourth Amendment violation as the basis for an ineffective assistance of counsel claim must establish "that his Fourth Amendment argument is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence . . . ."  *Kimmelman v. Morrison*, 477

4

U.S. 365, 375 (1986). Edmonds contends that a successful challenge would have resulted in suppression of evidence that was crucial to his conviction on the gun and heroin charges.

In assessing a claim of ineffective assistance, the Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. In particular, an attorney is not required to "pursue arguments that are clearly destined to prove unsuccessful." *United States v. Lawson*, 947 F.2d 849, 853 (7th Cir. 1991).

The government argues that a challenge to the warrant would have had no reasonable chance of success. The Court does not agree, at least on the record as it now stands. The government seeks to draw an inference, based on the frequency with which officer Frano met with the informant and the date of the meeting in question, regarding when the informant likely had seen the activity cited in application. This argument is speculative, to say the least. Based on the warrant application alone, no decent inference may be drawn regarding when the informant had been in the 736 N. Ridgeway apartment. For this reason, the Court is unable to say at this juncture that a staleness challenge would have lacked merit.

Turning to the reasonableness aspect of the *Strickland* analysis, the government argues that counsel could have had good reason not to pursue a challenge to the warrant. Edmond's defense at trial was that he was only rarely at the apartment and that the evidence did not establish beyond a reasonable doubt that he possessed the firearm or narcotics (a quantity of heroin and a quantity of crack cocaine). The government argues that to establish his standing to challenge the search of the

Ridgeway apartment, Edmond would have had to offer evidence connecting him with the apartment. Such evidence, the government says, could have been used to strengthen the government's contention at trial regarding possession of the firearm and narcotics.

The government's focus on the issue of Edmond's standing has a basis in the record. Edmond states in his section 2255 motion that counsel told him he lacked standing to challenge the warrant given his contention that the firearms and narcotics did not belong to him and the fact that he was not present during the search. *See* Def.'s Mot. at 4 & Ex. 2 (Edmond Affid.) ¶ 1. In challenging counsel's advice, Edmond says that he told counsel he had a key to the apartment, gave the owner a deposit for the apartment, and shared the rent and bills for the apartment. *Id.* at 6 & Ex. 2 ¶ 4. He says that this evidence would have provided a basis for standing and that counsel misunderstood the law.

The government acknowledges that any testimony Edmond offered in support of a motion to suppress could not have been used against him at trial. *See Simmons v. United States*, 390 U.S. 377, 394 (1968). It contends, however, that the evidence Edmond cites would have provided leads that the government could have used at trial to buttress its contention that he possessed the firearms and narcotics found in the apartment. In the abstract, this might supply a reasonable strategic basis for defense counsel to forego a challenge to the warrant. But for all the Court knows, the government already had this evidence prior to trial, and if so the facts Edmond cites would not have been new leads. The government does not attempt to show otherwise. And the Court cannot rule out the possibility that the government had such evidence

6

from a source other than Edmond, namely his girlfriend Antonia Penister, who lived full time at the apartment. It is likely that the government interviewed Penister at some point, seeing as how it represented at trial that it might call her as a rebuttal witness. If the information the government cites was already in its possession via Penister or some other witness, and if defense counsel was aware of this via discovery, than the strategic basis the government hypothesizes for not challenging the warrant disappears.

In sum, on the present record, the Court cannot say that Edmond's ineffective assistance claim regarding the failure to challenge the search warrant is legally or factually infirm. Further development of the record, possibly including an evidentiary hearing, is required.

**2.    Suppression hearing**

Edmond's second ineffective assistance of counsel claim concerns the hearing on the motion to suppress the post-arrest statements. Edmond argues that counsel's decision not to call him to testify during the hearing was unreasonable and prejudicial. Edmond continues to maintain that the police failed to give him *Miranda* warnings, he did not waive his rights, and he did not make incriminating statements. Edmond argues that trial counsel's decision to rely exclusively on his cross-examination of the testifying police officer was doomed to fail and that the only chance of success on the motion to suppress was to call Edmond to testify.

In response, the government argues that defense counsel acted reasonably because calling Edmond would have been risky. Specifically, the government says that

> [t]he defendant—who had a strong motive to lie and prior convictions with which he could have been impeached—might have weakened his case through his testimony. Cross-examination might have revealed inconsistencies in defendant's account of what happened, or defendant

7

> might have made admissions helpful to the government's evidence that he
> knowingly waived his *Miranda* rights. Putting defendant on the stand
> would have put defendant's credibility front-and-center at a hearing where
> the government had the burden of proof and the defense attorney had
> other avenues available to attack that proof.

Gov't's Resp. at 22. On the present record, however, the government's argument about what might have happened if Edmond had testified at the hearing is entirely speculative, as is the proposition that this is why counsel did not call Edmond to testify at the hearing.

The government also argues that counsel's decision not to call Edmond to testify was not prejudicial because Edmond cannot show that his testimony would have made a difference in the outcome of the motion to suppress. The government's argument is premised on Judge Manning's finding that officer Frano was credible: it contends that if Edmond's affidavit was not persuasive in refuting Frano, there is no reason to believe that Edmond's testimony would have been persuasive. *See* Gov't's Resp. at 24. This argument does not hold water. Judge Manning's order does not suggest that she considered Edmond's affidavit in the course of determining that officer Frano was credible. *See* Case No. 11 CR 378, dkt. no. 33, Order of Jan. 9, 2012. Nor could the judge have done so, in view of the fact that there was an evidentiary hearing at which only Frano testified, a point the judge made in her ruling. *See id.* at 1. The ruling referenced Edmond's affidavit, but it did so only in identifying the issues raised in the motion, *see id.*—the only way that Judge Manning appropriately could have considered the affidavit.

Because Edmond did not testify, the government's contention that his testimony would not have swayed things is speculative. The government ultimately might prevail

on this point, but the Court does not believe that the issue can be determined without a hearing.

**3.    Sentencing**

Edmond also argues that the Court should reduce his sentence under 18 U.S.C. § 3582(c)(2) based on Amendment 782 to the Sentencing Guidelines, which retroactively lowered the base offense level for most drug crimes.  As the government argues, a section 2255 motion is not the appropriate mechanism to bring this type of claim, because a later change in the offense level does not render Edmond's sentence illegal.  But because Edmond is acting *pro se*, the Court will address the merits of his request.

The short answer to Edmond's argument about the effect of Amendment 782 is that it does not affect the offense level in his case.  The reason is that at sentencing, the Court determined Edmond's offense level based on the career offender guideline, not the drug quantity guideline.  *See* Case No. 11 CR 378, dkt. no. 105, Mar. 15, 2013 Tr. 8 (expressly finding Edmond's criminal history category to be VI and his offense level to be 32 based on the career offender guideline).  Later in the sentencing hearing, when discussing the factors under 18 U.S.C. § 3553(a), the Court determined that a sentence within the range called for by the career offender guideline would have been far greater than necessary and that the guideline did not fit Edmond's situation given the light sentences on his prior crimes.  *See* Mar. 15, 2013 Tr. 26-27.  But this does not change the fact that Edmond's offense level was determined based on his career offender status.  Edmond argues that he was not sentenced under the career offender guideline, but the record reflects that he, quite simply, is wrong about this.

Edmond spends considerable time in the third section of his motion discussing the applicability of *United States v. Guyton*, 636 F.3d 316 (7th Cir. 2011). *See* Def.'s Mot. 20-21. In *Guyton*, the Seventh Circuit left open the question of whether a defendant's applicable guideline range for purposes of a motion for sentence reduction is considered to have been determined before or after a downward departure under Guideline 4A1.3 for an overstatement of criminal history. *See Guyton*, 636 F.3d at 319. This, however, is beside the point, because the Court did not rely on Guideline 4A1.3 in giving Edmond a below-range sentence. Rather, the Court relied on 18 U.S.C. § 3553(a), concluding that a sentence within the advisory range under the career offender guideline would be unjust and unduly excessive given the nature of Edmond's prior offenses and the types of sentences imposed for those offenses.

For these reasons, Amendment 782 does not entitle Edmond to a sentence reduction, because it does not reduce his Guidelines offense level. *See United States v. Forman*, 553 F.3d 585, 589-90 (7th Cir. 2009).

## Conclusion

For the foregoing reasons, the Court denies defendant's request to modify his sentence but declines to dismiss his section 2255 motion. The Court will appoint counsel to represent Edmond on the motion. A status hearing is set for December 10, 2015 at 9:30 a.m.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: November 9, 2015