**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | Case No. 15 C 3566 |
| | ) | |
| TRALVIS EDMOND | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Tralvis Edmond is serving a term of imprisonment following his conviction on drug and gun charges. He has moved under 28 U.S.C. § 2255 to set aside his conviction and sentence, alleging ineffective assistance of counsel. One of Edmond's claims is that his trial counsel rendered ineffective assistance by failing to file a motion to suppress evidence seized via the execution of a search warrant at 736 N. Ridgeway in Chicago. The Court concluded that an evidentiary hearing was needed on this claim. By agreement of the parties and the Court, the hearing was initially limited to the question of whether counsel's failure to file a motion to suppress was objectively unreasonable. The issue of prejudice was reserved for later determination. The hearing took place on June 16, 2016. This constitutes the Court's findings of fact and conclusions of law.

**Facts**

On May 20, 2015, Chicago police officers executed a warrant obtained by officer John Frano. Frano obtained the warrant based on information from a confidential informant. In the affidavit that he submitted to obtain the warrant, Frano said that on

May 18, an informant told him that on an unspecified date, he was at Edmond's residence at 736 N. Ridgeway and observed him handling significant quantities of narcotics packaged for sale, some of which the informant purchased. Frano further stated in his affidavit that on May 18, he drove the informant past 736 N. Ridgeway, and the informant pointed out the basement apartment as the location where he had purchased the narcotics from Edmond. When officers executed the warrant on May 20, Edmond was not present, but his girlfriend Antonia Penister was. The officers recovered two loaded firearms and significant amounts of heroin and crack cocaine packaged for distribution. Penister told the officers that she and Edmond lived in the apartment together and that Edmond had recently purchased the firearms after being robbed.

Trial counsel did not file a motion to suppress the evidence seized pursuant to the warrant. Edmond contends that trial counsel should have moved to suppress on the ground that (perhaps among other things) the information used to obtain the warrant was stale. In response to Edmond's contention to this effect in his section 2255 motion, the government argued that counsel had a good strategic basis not to file a motion to suppress, specifically, that to support the motion, Edmond would have had to testify, and his testimony could have provided leads that the government could have used at trial to buttress its contention that he possessed the firearms and narcotics found in the apartment. The Court rejected this argument as speculative, and as it turns out trial counsel did not take this point into consideration at all. *See* June 16, 2016 Tr. at 54-55. Rather, counsel determined not to file a motion based exclusively on his belief that

Edmond lacked standing to challenge the search. Edmond argues that this counsel's decision was based on a misunderstanding of the law.

Both trial counsel and Edmond testified at the hearing regarding what Edmond told counsel about his connection with the apartment. There are some conflicts in their testimony. For present purposes, the Court will base its decision on trial counsel's testimony regarding the evidence that he had and what Edmond told him.

Trial counsel testified that Edmond told him that Penister—who Edmond described as his girlfriend—and their two children lived at the apartment but that he (Edmond) did not. June 16, 2016 Tr. at 13-14. Edmond also told counsel that at the time of the search, he and Penister were not seeing each other and "were kind of off and on at that time, their relationship." *Id.* at 14. When asked whether Edmond told him that he would stay at the apartment three nights a week, counsel said no, and that what Edmond said was that during the time period in question, he and Penister "were kind of – still on the outs, kind of, but that he would visit the home two to three days a week" and that he also financially supported the children. *Id.* at 15.

Trial counsel also testified that he had talked to Penister regarding when and how often Edmond was at the apartment—and, during this testimony, he returned to what Edmond had told him about this:

> Q: And didn't she tell you Mr. Edmond would stay there?
>
> A: Yeah, that he would visit two days a week, two or three days a week.
>
> Q: *And he would spend the night?*
>
> A: *Some nights he spent the night. Sometimes he spent the night, sometimes he didn't. And if I might, Mr. Edmond said that as well; said sometimes he spent the night, sometimes he didn't.*

3

*Id.* at 16-17 (emphasis added).

On cross-examination by the prosecutor, trial counsel stated that Penister told him that at the time of the search, Edmond was not living at the apartment because they had had a dispute. *Id.* at 37-38. Counsel also testified that neither Edmond nor Penister had told him that he had a key to the apartment "at the time the search occurred." *Id.* at 38.

Counsel also obtained via discovery a police report relating that Penister told the police that Edmond had lived with her at the apartment for over two years. *Id.* at 18.[1] Counsel said, however, that he did not find this persuasive, based on what he characterized as Edmond's "adamant" statements that "he didn't live at the apartment." *Id.* at 19.

Via discovery, counsel received from the government documents that included Edmond's checkbook, which was recovered at the 736 N. Ridgeway apartment during the search. *Id.* at 22. Also recovered during the search was a receipt dated April 19, 2010, bearing Edmond's name and listing 736 N. Ridgeway as his address. *Id.* at 23-24. The police also recovered from the apartment a receipt for Edmond's purchase of a vehicle from a third party and a certificate attesting that Edmond had completed a phase of the Cook County "impact incarceration" program. *Id.* at 24-26. The government relied on this evidence at trial as proof of Edmond's residence at the apartment.

Counsel testified that he did not file a motion to suppress because

---

[1] Counsel later obtained via discovery a memorandum of a federal agent's interview with Penister in September 2012, in which she stated that Edmond "lived" in the apartment with her and her children approximately three or four days per week. *See* Def.'s Mem., Ex. F. at 1.

4

> I believed that he didn't live [at the apartment] based on what he told me. When we looked at the police reports in addition to the complaint, there was no evidence that he lived there. And he told us that at the time, he and Ms. Penister, Antonio Penister, were not seeing each other. They were kind of off and on at that time, the relationship.

*Id.* at 14. More specifically:

> Q: And was the reason for that because you didn't believe Mr. Edmond had standing to challenge the search warrant?
>
> A: Based on what he told us, that's correct, we didn't believe – *we didn't believe he lived there, and he told us he didn't live there*.

*Id.* at 15 (emphasis added).

The Court asked counsel whether he had contemplated the possibility of establishing Edmond's standing by means other than his testimony, specifically, by relying on other evidence obtained in discovery. Counsel said that in his experience, "that would not have gotten us a hearing." *Id.* at 54.[2]

When asked by the Court whether he believed, aside from the standing issue, that there was a meritorious basis for suppression of the evidence obtained from the search, counsel stated the following:

> THE WITNESS: I don't think so, but to be frank, your Honor we – after our discussions with Mr. Edmond, I guess it's easier now to get past the standing issue. I view and always looked at the reports and the suppression, and my thinking about the suppression issue was always informed by what Mr. Edmond told us, and so we never believed we had standing.
>
> THE COURT: Okay. But put aside the standing issue. What would have been the issue in the motion to suppress if you had filed it? In other words, would it have been that there wasn't enough in there to show probable cause, or was there some reason to believe that there was false information given to the judge who issued the warrant, or what would it have been?

---

[2] The Court finds this questionable, but it need not address the point given its decision on the reasonableness of counsel's view of the merits of standing issue.

>THE WITNESS: Your Honor, I never –
>
>THE COURT: Didn't get to that point.
>
>THE WITNESS: I didn't get to that point.

*Id.* at 51-52.

## Discussion

A defense attorney's failure to file a motion to suppress evidence constitutes ineffective assistance of counsel if the decision not to file the motion was objectively unreasonable and the attorney's client was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 687-88, 693 (1984); *Gentry v. Sevier*, 597 F.3d 838, 851 (7th Cir. 2010). As indicated earlier, the June 16, 2016 evidentiary hearing was limited to the issue of objective unreasonableness. If counsel's decision not to file the motion was based on a misunderstanding of the law, then it was objectively unreasonable. *See Gardner v. United States*, 680 F.3d 1006, 1012 (7th Cir. 2012); *Johnson v. United States*, 604 F.3d 1016, 1019 (7th Cir. 2010).

Trial counsel testified that he determined not to file a motion to suppress based on Edmond's statements to him that he "did not live at" the apartment at the time of the search and other evidence to the same effect. The law, however, does not require a person to "live at" a particular premises in order to have standing to challenge a search of it. That has been clear since at least 1990, when the Supreme Court decided *Minnesota v. Olson*, 495 U.S. 91 (1990). In that case, the Court debunked "the mistaken premise that a place must be one's 'home' in order for one to have a legitimate expectation of privacy there," *id.* at 96, and it concluded that the defendant's status "as an overnight guest is alone enough to show that he had an expectation of privacy in the

6

home" that was reasonable and protected under the Fourth Amendment. *Id.* at 96-97. The court stated: "From the overnight guest's perspective, he seeks shelter in another's home precisely because it provides him with privacy, a place where he and his possessions will not be disturbed by anyone but his host and those his host allows inside." *Id.* at 99. And there was nothing particularly new or novel about *Olson*. Thirty years earlier, in *Jones v. United States*, 362 U.S. 257 (1960), a defendant who had a key to a friend's apartment, had a change of clothes there, and was permitted to use it "as a friend" but had only slept there "maybe a night" was held to have standing to challenge a search of the apartment. *Id.* at 259, 267. In *Rakas v. Illinois*, 439 U.S. 128 (1978), the Court reaffirmed that *Jones* established "that a person can have a legally sufficient interest *in a place other than his own home* so that the Fourth Amendment protects him from unreasonable governmental intrusion into that place." *Id.* at 141-42.

To be sure, the fact that a person may have stayed in a home at some point is not always enough to give rise to a reasonable expectation of privacy protected by the Fourth Amendment. This is reflected in the cases on which the government relies in its post-hearing memorandum. For example, in *United States v. Battle*, 637 F.3d 44 (1st Cir. 2011), the court concluded that the former boyfriend of an apartment dweller did not have a protectable expectation of privacy in the apartment after the apartment dweller had "told [him] to leave her house and not come back" after he confronted her with a gun. *Id.* at 46. The court said that "[a] defendant lacks a legitimate expectation of privacy in a place . . . when he does not have permission to be present," which was the case given that he had been told to leave and not return. *Id.* at 49. Similarly, in *United States v. Knutson*, No. 03-CR-181-8, 2004 WL 635571 (W.D. Wis. Mar. 4, 2004), the

7

defendant lacked standing to challenge a search because "his tenure as [a] houseguest had ended weeks before the agents visited," when he was jailed. *Id.* at *2. Finally, in *United States v. Hernandez*, No. 05 CR 485-6, 2006 WL 200513 (N.D. Ill. Jan. 20, 2006), the defendant alleged only that he had, on occasion, stayed overnight at the apartment that was the subject of a search. This, the court concluded, was insufficient to give him a legitimate expectation of privacy. *Id.* at *3.

This case, however, is nothing like those cited by the government. There is no evidence that Penister had kicked Edmond out or barred him from the apartment. Indeed, the evidence is to the contrary. Defense counsel testified that Penister had told him that as of the date of the search, even though she and Edmond were "on the outs, kind of," he still came to the apartment two or three days per week, and "[s]ome nights he spent the night." June 16, 2016 Tr. at 15, 16-17. Defense counsel also testified that "Mr. Edmond said that as well; said sometimes he spent the night, sometimes he didn't." *Id.* at 17. In short, Edmond was still a regular guest at Penister's apartment as of the time of the search, even though he was not staying there each and every night. Unlike the defendants in *Battle*, *Knutson*, and *Hernandez*, he had not stopped coming to and staying at the dwelling that was searched, and he most certainly had not been excluded by Penister. It is also noteworthy that Edmond still had belongings at the apartment, including a checkbook and important documents. In sum, the evidence that counsel had was more than sufficient to establish under *Olson* and its progeny that Edmond had standing to challenge the search. *See, e.g., United States v. Paradis*, 351 F.3d 21, 27 (1st Cir. 2003) (defendant stayed in girlfriend's apartment only when they were not fighting); *United States v. Owen*, 65 F. Supp. 3d 1273, 1281 (N.D. Okla. 2014)

8

(defendant had stayed overnight in girlfriend's house only four times, regularly resided at mother's home, and did not contribute to girlfriend's household expenses); *United States v. Smith*, No. 3:06cr27RV, 2011 WL 4904404, at *7-8 (N.D. Fla. Sept. 23, 2011) (defendant was not living with girlfriend at time of search but had periodically stayed at her home while they were dating); *United States v. Watson*, No. 07-cr-238, 2010 WL 1924474, at *3 (E.D. Pa. May 6, 2010) (defendant was "occasional visitor" to girlfriend's home but paid the bills and had a key and was coming to stay over on the day of the search); *United States v. Romero-Leon*, No. 09-CR-902 WJ, 2010 WL 3613797, at *3 (D.N.M. Apr. 19, 2010) (defendant—like Edmond—had children living at apartment and regularly watched them while their mother was at work).

The government also contends that because Edmond was not physically present at the apartment at the time of the search, he lacked standing. This argument is unsupported. The Court is unaware of any Supreme Court or Seventh Circuit case—and the government has cited none—suggesting that one's standing to challenge a search depends on physical presence at the time and place of the search. Is the government actually suggesting that if the houseguest in *Olson* had gone out to get coffee, the government could have swooped in and searched his room without a warrant or his consent, on the ground that he wasn't there *at that moment*? A rule to this effect would make no sense. A homeowner has standing to challenge the search of his home even if he does not happen to be there at the time of the search; a houseguest who has standing under *Olson* likewise can challenge a search even if he does not happen to be there at the time.

The record contains no evidence that defense counsel did legal research regarding the standing issue and determined, after analyzing the case law, that Edmond could not establish standing. Indeed, there is no evidence that he did any legal research on the issue at all. Rather, counsel's testimony is that he made his decision not to file a motion to suppress based exclusively on his understanding that Edmond did not "live at" his girlfriend's apartment at the time of the search. That, as the Court has stated, is not the applicable legal standard. Based on the evidence in the record, counsel's decision not to file a motion to suppress was premised on a misunderstanding of the law. The Court finds that counsel's failure to file the motion was objectively unreasonable.[3]

As indicated earlier, the issue of prejudice under *Strickland* remains for determination. The Court sets the case for a status hearing on August 11, 2016 at 9:30 a.m. Counsel are to be prepared to discuss at that time what evidence will be offered on the issue of prejudice and whether an evidentiary hearing will be necessary, and if so to set a prompt date for the hearing.

Date: August 7, 2016

                                                    _____
                                                    MATTHEW F. KENNELLY
                                                    United States District Judge

---

[3] Defense counsel never considered the merits of a motion to suppress (aside from the threshold standing question), and the government did not argue at the hearing that a motion would have otherwise lacked merit, so the Court sees no need or basis to address that issue. Of course, if a motion to suppress would have lacked merit aside from the standing issue, the government may argue that point on the prejudice issue under *Strickland.*